IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


LEVI BAKER, on behalf of himself and all
others similarly situated                                          PLAINTIFFS


VERSUS                                    CIVIL ACTION NO. 1:04cv137WJG-JMR


WASHINGTON MUTUAL FINANCE
GROUP, LLC; and WASHINGTON
MUTUAL FINANCE OF MISSISSIPPI, LLC                    DEFENDANTS


MEMORANDUM OPINION


        This matter is before the Court on the motions for award of attorneys fees and

reimbursement of expenses, and the supplements thereto, submitted by class counsel, Richard A.

Freese and Tim K. Goss [89-1]; William Catledge [59-1]; Michael Hartung and Edward

Blackmon, Jr. [60-1, 112-1, 133-1, 136-1]; Roman Shaul [62-1, 111-1, 139-1]; Harry McCumber

[63-1]; Charles A. McCallum III and R. Brent Irby [Pinkston attorneys] [70-1]; R. Bradley Best

[115-1, 116-1, 117-1, 138-1]; and Suzanne Keys [61-1, 140-1].  Also pending before the Court

are the motions of Derek Hopson [118-1] to allow him to file fee application out of time, and a

motion for fees filed by Precious Martin [143-1] on behalf of Chris Cofer.  The applicants were

ordered by the Court to submit detailed fee reconciliation statements, (Ct. R., Doc. 104), and by

subsequent order of the Court, the attorneys were directed to submit amended claims of fees and

expenses removing any claims for fees or expenses not connected to the instant case.  (Ct. R.,

Order dated July 20, 2006.)  The amended statements were submitted and will be considered in

conjunction with the original submissions from the attorneys.  (Ct. R., Docs. 133, 135-140.)

The class action settlement agreement reached in this case and approved by this Court and by the Fifth Circuit Court of Appeals, provides as follows regarding class counsel's fees and costs:

> Class counsel shall seek a reasonable attorneys' fees and expenses in an amount not to exceed $1,700,000.00.  Additionally, counsel for other Settlement Class Members may request that the Court award them from the Settlement Fund reasonable attorneys' fees and expenses not to exceed $400,000.00 in total.  If approved by the Court, these amounts (or such lesser amounts approved by the Court) will be paid from the Settlement Fund.  City Finance will not oppose the foregoing requests; however, in no event may the aggregate amount awarded to all counsel for fees and expenses exceed $2,100,000.00.  If awarded by the Court, the foregoing amounts will be paid 10 business days after the Effective Date or 10 business days after the entry of a final and non-appealable order awarding fees and costs to Class Counsel, whichever date is later.  City Finance shall not be required to pay any attorneys' fees or costs to Class Counsel or to counsel for any plaintiff or individual Settlement Class Member, except as expressly provided herein.

(Ct. R., Docs. 120-121, 141; Doc. 54, Class Action Settlement Agreement, p. 11.)

The agreement further provides that "[t]he Mississippi Defendants will pay all costs of administering the Settlement Fund and such costs will not be charged against the Settlement Fund."  (*Id.*, p. 13.)  These costs include mailing of notice and a proof-of claim form and publication of the notice.  (*Id.*)  The agreement defines "Class Counsel" as Freese and the Alabama law firm Sweet & Freese, PLLC [Sweet, Freese]; and Goss' Texas law firm, Capshaw, Goss & Bowers, L.L.P [Capshaw, Goss].  (*Id.*, p. 5.)  Each of the fee requests will be summarized below.

Together, Freese and Goss seek a total expense and fee award of $1.7 million with an hourly rate of $350.00 requested for worked performed by Freese.  (Ct. R., Doc. Exh. 2.)  These requests are summarized in the following paragraphs.  Freese's co-counsel T. Roe Frazier also seeks the $350.00 rate.  (*Id.*)  Sweet, Freese attorneys JoAnne Allred, Leslie E. McFall, and

James S. Robinson seek an award of $225.00 per hour.  (*Id*.)  Five Sweet, Freese paralegals Regina L. Reese, Glenda K. Frye, Susanne Hydrick, Phyllis Cole, and Patti Burns request an hourly rate of $75.00 per hour.  (*Id*.)  Freese's law firm requested a total fee award of $197,860.00 prior to the submission of supplement.  (Ct. R., Doc. 112.)

Goss seeks a fee award in the amount of $495,172.50.  (Ct. R., Doc. 89.)  Goss and his co-counsel, Richard Capshaw, Mikel Bowers, and Billy Ravkind all request $350.00 as an hourly rate.  (*Id*., Exh 1.)  Capshaw, Goss attorneys Sara Vendral and Tamara Banno billed at the hourly rates of $300.00 and $250.00, respectively.  (*Id*.)  Iva York, Goss' paralegal, billed an hourly rate of $75.00.  (*Id*.)

In a supplemental affidavit, Goss contends that class counsel has a total of 2,439.70 hours of services rendered in the class case.  (Ct. R., Doc. 134, p. 3.)  The value of this time based on the various hourly rates set forth above results in a fee request of  $796,613.75, and expenses totaling $140,793.83, for work performed pre-and post-appeal.  (*Id*.)

Freese and Goss assert that additional time spent on further appeals of the case, along with administration of the settlement merit them an award of $1.7 million in fees and expenses, apparently regardless of any fee calculation based upon hourly rates and time expended.  (*Id*., p. 5.)  Class counsel contends that a multiplier is appropriate in this case for purposes of fee calculation.  (*Id*., p. 5.)

Catledge seeks an award of $64,158; which includes a request of $14,158 in expenses, for work allegedly expended on behalf of 1,100 cases against Washington Mutual filed over the 3 years prior to August 2004.  (Ct. R., Doc. 59.)  He does not specify who his clients were or which cases those individuals were involved in, either in federal or state court.  (*Id*.)  Catledge indicates

that he spent approximately 2,000 hours of work on the claims of 1,100 clients, resulting in a fee award of $200,000 billed at the rate of $100 per hour.  (*Id.*, p. 2.)  He advances a claim of $50,000 in attorneys fees, yet submits no specific documentation of work expended on these claims, basing his claim on a percentage of the award.  (*Id.*)  Catlidge argues that he is not seeking payment for additional work performed on behalf of 850 clients not filed in this case. (*Id.*, pp. 2-3.)  His travel expenses are listed by indicating travel to a particular city, the mileage, and the number of times he traveled to that city multiplied by 32 cents per mile.  (*Id.*, p. 3.) Catledge lists hotel expenses for the trips as well, includes a notation for long distance calls totaling $1,500, but fails to indicate on any of these claimed expenses the date the expenses were incurred, the reason for the trips, or whether a claim was included for attorney time relating to the travel.

The Pinkston attorneys, representing certain class members as defined in the settlement provision in this case, filed a motion to submit application and affidavit in support of a request for reimbursement for attorneys' fees and expenses.  (Ct. R., Doc. 70.)  Irby contends that he and McCallum, both attorneys with the McCallum Law Firm, LLC, spent more than 230 hours of attorney time working on the *Pinkston v. City Fin. Co.*[1], lawsuit, which was ultimately dismissed pending arbitration on November 5, 2003.  (*Id.*, pp. 1-2.)  He submitted a copy of pleadings filed in the lawsuit, but failed break down the time spent by each attorney on the pleadings.  (*Id.*, Exh. A.)

The attorneys' fee request is based on 230 hours, includes 200 hours of work performed by the McCallum Firm, billed at the rate of $225 per hour, and 30 hours performed by Gerald

---

[1]Civil Action No. 4:02cv132-PB (N.D. Miss. 2002) (Greenville Div.)

Jacks, billed at the rate of $200 per hour. (*Id.*, pp. 2-3.) Irby requests an hourly fee rate of $125 per hour for all work performed by the attorneys, regardless of their billing amounts listed above, for a total of $28,750 in fees. (*Id.*, p. 3; Exh. B.) Expenses in the amount of $2,536.98 are also sought. (*Id.*, p. 2.) The total award sought by these attorneys is $31,286.98. (*Id.*)

Keys seeks an award of $78,010.40 in attorneys' fees and expenses for work performed by the law firm of Byrd, Martin and Gibbs. (Ct. R., Doc. 61, p. 3, Exhs. A-B.) The award request relates to work performed in the case of *Walker v. City Fin. Co.*, *et al.*, Civil Action No. 4:01cv189MD, United States District Court for the Northern District of Mississippi, Greenville Division. (*Id.*, p. 1.) Keys indicates that Washington Mutual filed a motion to dismiss in the case which was granted. (*Id.*) According to Keys, the firm also worked on *Banks v. City Fin. Co.*[2], and was associated with other attorneys with a list of over 800 City Finance/Washington Mutual clients. (*Id.*, p. 2.) Keys and Isaac K. Byrd, Jr., both performed work on the cases and charge an hourly rate of $250 per hour. (*Id.*) The other attorneys listed as working on the case include Precious Martin, who billed at $175 per hour; Robert Clark and Ramel Cotten who each billed at the rate of $125 per hour. (*Id.*, p. 3.) In her motion to supplement, Keys indicates that the firm has not incurred any additional expenses since the first submission. (Ct. R., Doc. 140, p. 2.)

Blackmon and Hartung seek a total fee award of $344,550. (Ct. R., Doc. 61, p. 5.) Hartung bills an hourly rate of $225 per hour for 1961.3 hours of attorney time. (Ct. R., Doc. 112.) Blackmon asserts that his usual hourly rate is $350. (Ct. R., Doc. 61, p. 4.) The attorneys' award constitutes $334,550 in fees and $14,092.54 in expenses for this work, which is a claim

---

[2]*Philisia Banks, et al. v. City Fin. Co., et al.*, Civ. Action No. 2000-371, Circuit Ct. of Holmes Co., Miss.

for one-half of their actual expenses.  (*Id.*, pp. 4-5, Exh. B.)

In an amended fee application, Blackmon seeks payment for 43.50 hours of work billed at $300 per hour.  (Ct. R., Doc. 136-2, Exh. A, p. 7.)  Blackmon specified the number of hours spent on work on specific items in this case.  (*Id.*, Exh. A.)  Hartung also submitted an amended fee application in which he seeks payment in the amount of $59,400.  (Ct. R., Doc. 133-2.) Although he breaks down the hours spent on each task, he does not total the hours or specify an hourly rate.  (*Id.*)

Roman A. Schaul, with the law firm of Beasley, Allen, Crow, Methvin, Purvis, & Miles, P.C., submitted an affidavit for payment of fees and expenses from the proceeds of the settlement fund asserting that he represents about 1,238 clients.  (Ct. R., Docs. 62, 111, pp. 1-2; Exh. A.) His firms seeks an award of $173,900 in attorneys fees (representing 1,739 work hours billed at $100 per hour); $26,487.65 in travel, lodging and meal expenses; and $58,207.19 in litigation expenses.  (*Id.*, pp. 2-3.)  These expenses were incurred in pursuing claims in other proceedings against Washington Mutual and City Finance in state and federal court.  (*Id.*, p. 4.)  Schaul argues that this work benefitted the class as a whole, and that his clients were encouraged to participate in the class settlement.  (*Id.*)

In his supplement, Shaul revised his request to seek $9,170 in attorney's fees which results from the expenditure of 91.7 hours of time at the rate of $100 per hour.  (Ct. R., Doc. 139, p. 2.)  In addition, Shaul seeks $9,839.15 in expenses for a total of $19,009.15 in fees and expenses.  (Ct. R., Doc. 139, p. 3; Exh. A, B.)

Cofer & Associates, P.A., [Cofer] worked on behalf of various clients in several separate

lawsuits[3] filed against Washington Mutual in Mississippi.  (Ct. R., Doc. 63, pp. 1-2.)  This firm presented affidavits and expenses for work on these cases.  (*Id*., Exhs. A-C.)  In addition, Cofer worked as co-counsel in the *Banks* case and submitted a claim for that work.  (*Id*., Exh. D.) Cofer also asserts it represents that 13 "non-filed" clients with "potential" claims against Washington Mutual and that it has a contingency fee contract with these and other filed clients. (*Id*., Exh. E.)  Cofer seeks an award of $141,423.12 for its work on these cases.  (*Id*., p. 3.)  This represents a claim of 709.50 attorney hours of work billed at $175.00 per hour for a claim of $124,162.50.  (*Id*.)  Cofer's expenses are listed as $17,260.62, and the fee request was submitted by McCumber on Cofer's behalf.  (*Id*.)

Best of Holcomb Dunbar, P.A., submitted a fee request and a supplement.  (Ct. R., Docs. 115-117, 138.)  The initial fee request sought reimbursement for work performed on behalf of Martha Eppinger, Teresa Reed, Bobbie Young, Beatrice Wright, Flora Yates, Martha Tidwell, and Nathaniel Tidwell [Eppinger clients] and Elizabeth Brown, Joyce Martin, Willie Brown, Mary Haskins, and Sherry Moore [Brown clients]; both groups are "filed class members."  (Ct. R., Doc. 115, p. 1.)  The firm seeks fees and expenses totaling $72,922.72 for work performed for the Eppinger clients, constituting a fee award of $62,500.00 and payment for expenses totaling $10,422.72.  (Ct. R., Doc. 117, p. 3.)  A total fee request of $44,140.59 is sought for

---

[3]*Philisia Banks, et al. v. City Fin. Co., et al.*, Civ. Action No. 2000-371, Circuit Ct. of Holmes Co., Miss.; *Annie McDaniel v. Washington Mut. Fin. Group, LLC*, Civ. Action No. 2003-0234, Circuit Ct. of Holmes Co., Miss.; *Hattie McLaurin, et al. v. Washington Mut. Fin. Group, LLC, et al.*, Civ. Action No. 2003-235, Circuit Ct. of Holmes Co., Miss.; *Tomeka Edwards v. Washington Mut. Fin. Group, LLC, et al.*, Civ. Action No. 2003-0339-CI, Circuit Ct. of Sunflower Co., Miss.; *Pearl Weaver v. Washington Mut. Fin. Group, LLC, et al.*, Civ. Action No. 2003-0293, Circuit Ct. of Oktibbeha Co., Miss.; *Ronnie Darby, et al. v. Washington Mut. Fin. Group, LLC, et al.*, Civ. Action No. 2003-264, Circuit Ct. of Jones Co., Miss.; *Idella Anderson, et al. v. Washington Mut. Fin., et al.*, Civ. Action No. 3:02cv197LS, United States Dist. Ct. for the Southern Dist. of Miss., Jackson Div.; *Lestine Banks, et al. v. City Fin. Co., et al.*, Civ. Action No. 4:02cv265PB, United States Dist. Ct. for the Northern Dist. of Miss., Greenville Div.; *Larry & Joyce Walker v. City Fin. Co., et al.*, Civ. Action No. 4:01cv189MD, United States Dist. Ct. for the Northern Dist. of Miss., Greenville Div.

work performed on behalf of for the Brown clients, which includes expenses in the amount of $8,515.59.  (Ct. R., Doc. 116, p. 3.)  The attorney time associated with the Brown clients totaled over 285 hours, which if reimbursed at the requested rate of $125 per hour would net a fee award of $35,625.00.  (*Id.*)

After the Court ordered supplementation of fee requests, the firm submitted new requests for the aforementioned clients.  (Ct. R., Doc. 138.)  The firm now seeks $34,938.75 in fees at the rate of $150 per hour for attorney time and $65 per hour for paralegal time.  (*Id.*, p. 3.)  In addition, the firm seeks $2,328.03 in expenses associated with these cases.  (*Id.*, p. 4.)

Finally, as previously stated, class counsel Goss and Freeze seek an award of $1.7 million in fees and expenses from the $7 million settlement offer.  (*Id.*, p. 1.)  Class counsel asserts that a separate fund of $400,000 has been set aside for other non-class counsel awards for attorney fees and costs.  (*Id.*)  Class counsel maintains that the $1.7 millions is less than 25% of the total fee award, and the total fee award is only 30% of the total proposed settlement.  (*Id.*)

Class counsel further contends that the settlement was achieved through their advocacy and extensive negotiations, and that a 30% award is within the normal range of contingency fee matters of this type and appropriate to the case.  (*Id.*, pp. 1-2.)

<u>Discussion</u>

The Court is under a duty to protect absent class members and to police class action proceedings and must approve the terms of any settlement of a class action.  FED. R. CIV. P. 23(e); *see Evans v. Jeff D.*, 475 U.S. 717, 726 (1986).  This duty "includes the obligation to explore the manner in which fees of class counsel are . . . paid and the dollar amount for such services."  *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 680 (S.D. Tex. 1976), *aff'd* 577 F.2d

335 (5th Cir. 1978).  The Court must assess the reasonableness of the attorneys' fees.  *Strong v. BellSouth Telecomms, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).  The Fifth Circuit uses the lodestar method for determining reasonable attorney's fees in class actions.  *Strong,* 137 F.3d at 850; *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999); *Longden v. Sunderman,* 979 F.2d 1095, 1100-1 (5th Cir. 1992).  In addition, the Court is "not bound by the agreement of the parties as to the amount of attorneys' fees."  *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980), *cert. denied* 449 U.S. 1011.

The Court's duty under Federal Rule of Civil Procedure 23 to protect absent class members and police class action proceedings includes "the obligation to explore the manner in which fees of class counsel are to be paid and the dollar amount for such services."  *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 680 (S.D. Tex. 1976), *aff'd* 577 F.2d 335 (5th Cir. 1978). In this undertaking, the Court must determine the reasonable number of hours expended by counsel on the litigation and the reasonable hourly rate for each attorney.  *See Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996).  The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate.  *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995), *cert. denied* 516 U.S. 862.  In essence, this means that although the parties agreed to a specific breakdown of the attorney fee award in the settlement agreement, the Court may determine that the award should be made in a different fashion.

I.      *Washington Mut. v. Blackmon*[4]

Blackmon, Freese, Goss and Hartung submitted an application for compensation based on

---

[4]*Washington Mut. Fin. Group, LLC v. Greta Blackmon, et al.*, No. 2001-CA-01911-SCT.

work performed for certain clients in *Blackmon v. Washington Mut.*, CA 98-0026, Circuit Court of Holmes County, Mississippi, the state court case currently on appeal in the Mississippi Supreme Court, and other lawsuits against Washington Mutual.  (Ct. R., Docs. 60, 89, 112, 133, 134, 136.)  The *Blackmon* suit was filed in 1998 on behalf of 52 plaintiffs, which proceeded to trial with a resulting award to 23 plaintiffs in the amount of $71,265,000.  (Ct. R., Doc. 60, p. 1.)  The judgment was reduced to $53,217,273.  (*Id.*, pp. 1-2.)

In addition, a satellite companion case was filed in Rankin County, in which Washington Mutual sought a Bill of Peace through these attorneys.  (*Id.*, p. 2.)  That lawsuit was later dismissed.  (*Id.*)  The attorneys contend that the work on these cases included development of issues and claims which benefitted the class.  (Ct. R., Docs. 112, pp. 5;133; 136.)

The instant suit was originally filed by Freese on March 23, 2004.  (Civil Cover Sheet.)  Levi Baker filed an affidavit requesting that Freese be appointed class counsel on May 3, 2004.  (Ct. R., Doc. 20.)  Goss filed his affidavit for admission *pro hac vice* on April 20, 2004.  (Ct. R., Doc. 14.)

Goss specifies cases considered "parallel litigation" to include the *Blackmon* case, *Abron v. Washington Mut.*, Civil Action No. 4:01cv38, United States District Court for the Northern District of Mississippi, and *Aldridge v. Washington Mut.*, Civil Action No. 3:01cv126WHB in the United States District Court for the Southern District of Mississippi, Jackson Division.  (Ct. R., Doc. 119, pp. 3-4.)  The parallel litigation hours total 3,335 for Capshaw, Goss and 1,242.8 for Sweet, Freese.  (*Id.*, p. 6.)  The attorneys contend that the work on the parallel case, including extensive discovery and work on dispositive motions developed the foundation for the present class complaint.  (*Id.*, p. 7.)  The attorneys claim that the necessity of familiarizing themselves

with Washington Mutual's business policies, training procedures, employee instructions,

operational practices, and business documents facilitated the drafting of the class action

complaint.  (*Id.*)  Also knowledge of legal obstacles, available defenses, and existing precedent

helped in negotiating the settlement reached in this case.  (*Id.*, pp. 7-8.)

   Blackmon and Hartung contend they were extensively involved in the state court

litigation preceding this class action suit and that the work performed in the state court suits was

a precipitating cause of the settlement agreement reached in this case.  (Ct. R., Doc. 61, pp. 2, 4.)

They both appeared at the initial fairness hearing on May 3, 2004.  (*Id.*)  Hartung was designated

as spokesperson for a class of objectors.  (*Id.*)  An objection was filed to the proposed class

action settlement by Hartung on May 20, 2004.  (Ct. R., Doc. 34.)   Blackmon and Hartung also

represented clients in three other causes of action filed against Washington Mutual in Holmes

County Circuit Court.  (*Id.*, p. 3; Exh. A.)  Those cases were being prosecuted at the time of the

class action settlement in this case in April 2004.  (*Id.*, pp. 3-4.)

The settlement agreement specifically excludes from the settlement class any state or

federal judges and their immediate family members; persons who previously settled claims

against City Finance; persons who had asserted claims against City Finance but those claims

were finally adjudicated to be non-meritorious prior to the date of the settlement agreement; and

persons who prior to the date of the agreement obtained a judgment or arbitration award in their

favor against City Finance, whether that judgment or arbitration award has been finally

adjudicated meritorious.  (Ct. R., Doc. 54, p. 8.)  Accordingly, the Court entered an order

directing those firms seeking attorneys fees and expenses to submit amended requests listing

expenses only pertinent to the instant case.  (Ct. R., Order dated July 20, 2006.)

The settlement agreement also specifically excludes from the settlement class any persons who had obtained a judgment in their favor against City Finance[5], regardless of whether the judgment was finally adjudicated to be meritorious.  (Settlement Agreement, p. 8.)  Accordingly, the Court finds that any claim made by any law firm for work performed on the *Blackmon* case, as well as any other suit which the Court identifies as being included in the language excluding that suit from the settlement agreement in the instant lawsuit, should be stricken from the fee request.  This includes expenses incurred in connection with these cases.

This determination eliminates a total of 1242.8 hours from Freese's application.  (Ct. R., Doc. 110, Exh. 2.)  Hartung requested compensation for 2004.8 total hours of work, including 699.4 hours expended on work in the *Blackmon* case, which is disallowed.  (Ct. R., Doc. 105, Exh. A.)  Goss requested payment for 2,093 attorney and paralegal hours for work on the *Blackmon* case which will be eliminated from the fee request, although the remaining hours expended on the other cases characterized as parallel litigation will be allowed.  (Ct. R., Doc. 109, Exh. 2.)  Additionally, the Court will eliminate any request for fees included in Blackmon's fee requests for work in the *Blackmon* case.  (Ct. R., Doc. 112, pp. 27-29.)  The Court ascertained by examining the information filed in support of the fee requests that part of the expenses listed for Goss and Freese were amassed during the *Blackmon* case.  (Ct. R., Docs. 109, 110.)  Freese's request for $45,225 in expert fees was reduced by half, to reflect payments to experts made in the *Blackmon* case, as outlined in the reconciliation of hours.  (Ct. R., Doc. 110, Exh. 4.)  In addition, Freese's listed expenses for airlines and hotel will be reduced by one half.  (*Id.*)  The following breakdown sets forth the hours to be deducted from the hours submitted by attorneys  and

---

[5]This exclusion is explained within the agreement to include Washington Mutual.  (Settlement Agreement, p. 1.)

paralegals relative to the above analysis, as well as the expenses related to the excluded cases:

| | |
|---|---|
| Blackmon[6]: | 32.75 attorney hours |
| Capshaw, Goss: | 1,659.20 attorney hours |
| | 433.80 paralegal hours |
| | $5,271.56 in expenses |
| Sweet, Freese: | 857.65 attorney hours |
| | 385.15 paralegal hours |
| | $31,970.18 in expenses |
| Hartung: | 699.40 attorney hours |
| | $16,035.47 in expenses[7] |

II.   *Johnson* Factors

Using the factors outlined in *Johnson v. Georgia Highway Express, Inc.*[8], class counsel asserts that the fee request is reasonable.  (Ct. R., Doc. 198, pp. 18-20.)  The *Johnson* factors include consideration of:  (1) time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) is the fee fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson,* 488 F.2d at 717-19).  The

---

[6]Although Blackmon claims an award for a total of 413.25 hours in his latest fee request, the Court finds that the total hours are, in fact, 245.50; leaving a possible compensable total of 212.75 hours after the Blackmon hours are deducted.  (Ct. R., Docs. 112, 136.)

[7]These expenses include both Blackmon and Hartung.

[8]488 F.2d 714 (5th Cir. 1974).

*Johnson* analysis need not be meticulously detailed, but must articulate and clearly apply the *Johnson* criteria. *Kellstrom,* 50 F.3d at 331; *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

The attorneys assert that "class counsel's efforts have resulted in a substantial recovery for the settlement class without burdening the judicial system with additional time-consuming and costly motion practice, discovery disputes, trials and appeals.  Class counsel should be rewarded for their efficient and expeditious resolution of this litigation, without expending needless time solely to justify a fee request."  (Ct. R., Doc. 108, p. 19.)  Goss submitted an affidavit in which he discussed the *Johnson* factors he believes applicable in this case, determining that the case was unusually difficult for counsel because of negotiating with formal and informal objectors in the suit; research on technical aspects and decisions relating to class certification; retention of an expert witness; and negotiation of a favorable settlement for the plaintiffs in spite of changing lender liability law.  (*Id.*, Goss Aff., pp. 1-2.)  He avers that the case was taken on a contingency basis, without outlining the percentage of that arrangement. (*Id.*, p. 2.)  Goss contends that if all hours expended on this case and related cases were tallied, the lodestar would be $1,852,550, and that expenses for the class action are in excess of $50,000. (*Id.*, p. 6.)  Without submitting further documentation beyond this affidavit, Goss asserts that the $1.7 million requested for fees and costs for class counsel is reasonable.  (*Id.*, p. 7.)

The history of this litigation is not unusual and the time and effort put into the case working toward settlement is not extraordinary given the number of claimants in this case.  The case was resolved in the early stages of litigation, and the attorneys had worked on the same type claims against the same defendants for a number of years in both federal and state court litigation

before this case was filed.  For the same reason, the case is not particularly unusual or novel for

the attorneys involved.  (Ct. R., Doc. 89, Goss Aff., p. 6.)  The Court concludes that the time and

labor required in this case does not warrant adjustment to the benchmark in this case.

      The self proclaimed skill of the attorneys involved is recognized and their experience in

this exact type of litigation does not warrant an adjustment to the benchmark in this case.

Neither does the Court find that the award should be adjusted for preclusion of other employment

based on the hours expended by the attorneys in working on this case.  There is no indication that

a reduction of employment on other cases resulted from the attorneys time spent on this case, in

fact it appears from the history of the litigation by these firms against these defendants that the

opposite effect may be true.  The Court finds no reason to adjust the fee award based on these

factors.  *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 800 (5th Cir. 2006); *In re Catfish

Antitrust Liti.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996).

      Class counsel asserts that the proposed fee in this case is in line with fees customarily

awarded in such cases, and the Court concludes that there is no reason to adjust the award in this

case based on this factor.  Because class counsel and the other attorneys in this case assert that

they undertook representation of their clients on a contingency basis, and those attorneys would

receive a percentage of the settlement fund for their fees, the Court finds no reason to adjust the

award based on this factor.  Further, the Court finds no reason to adjust the award based on the

results obtained in this case.

      Each of the attorneys involved in this case has rendered outstanding work on behalf of

their respective clients.  The case is not, however, any more undesirable than any other case of its

size, especially given the fact that the attorneys have participated in litigation against this client

in other forums.  The Court finds that neither of these factors warrant an adjustment of the benchmark percentage.  The Court further finds no reason to adjust the award based on the nature and length of the professional relationship between the attorneys and their clients.

Although the settlement in this case is a substantial sum, $7 million, this factor does not warrant an adjustment to the lodestar.  In summary, the Court has found the settlement amount to be fair, adequate and reasonable, but does not find that such amount warrants an adjustment of the benchmark rate.  The Court will analyze each attorney's fee request in turn.

III.     Reasonable Fees

A.     Number of Hours Claimed

The attorneys presented a reconciliation of the time spent on the aforementioned projects listed in chronological order, along with a general breakdown of costs.  The time and labor required as submitted by the attorneys may be altered by the district court upon consideration of the documents presented and the circumstances surrounding the case.  *Hensley v. Eckerhart*, 461 U.S. 424, 433-7 (1983).  The fee applicant bears the burden of proving the reasonableness of the hours expended and is under a duty to segregate her/his fees.  *Mota v. University of Tex.,* 261 F.3d 512, 528 (5th Cir. 2001); *United States v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998), *reh'g denied* January 4, 1999.

Courts should examine both whether the total number of hours claimed is reasonable and whether specific hours claimed were reasonably expended.  *League of United Latin Am. Citizens No. 4552 v. Roscoe Ind. Sch. Dist.,* 119 F.3d 1228, 1232 (5th Cir. 1997).  Any hours not reasonably expended, or which are excessive or duplicative should be excluded from consideration.  *See Hensley,* 461 U.S. at 434; *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.

16

1993).

The Court may also eliminate or reduce hours when the supporting documentation of the hours claimed is "vague or incomplete." *See Kellstrom*, 50 F.3d at 326; *Watkins,* 7 F.3d at 457. As explained in *Kellstrom,* "[l]itigants take their chances" by submitting fee applications that are too vague to permit the district court to determine whether the hours claimed were reasonably spent, or when submitting "inadequately documented fee applications which provide little information from which to determine the reasonableness of the hours expended on tasks vaguely described or lumped together." *Walker v. HUD,* 99 F.3d 761, 773 (5th Cir. 1996); *Kellstrom*, 50 F.3d at 327.  When a party submits a fee application without proper documentation, the court has the discretion to reduce the award to a reasonable amount.  *No Barriers, Inc. v. Brinker Chili's Texas, Inc*., 262 F.3d 496, 500-1 (5th Cir. 2001).

This description describes the entire fee application submitted by Catledge, which merely breaks down an estimated number of hours spent on the case and utilizes a percentage of the possible $1.7 million fee award to reach an amount claimed for attorney fees.  (Ct. R., Doc. 59, p. 2.)  In addition, the fee application presented by the Pinkston attorneys merely provides a pleading index with no breakout of hours for work performed on these pleadings.  (Ct. R., Doc. 70.)  Since that time, Catledge filed an amended fee application which outlines only time spent on this case.  (Ct. R., Docs. 145-6.)  Catledge's amended fee request includes 120 hours spent on the case by Anita Knowles, his paralegal.  (Ct. R., Doc. 146, p. 2.)

Although the Court recognizes that many hours were expended by these firms on behalf of their clients, the failure to provide billing records to allow meaningful review of the time spent, and to verify that the work was performed in connection with the claims encompassed by

this settlement results in the Court concluding that the initial application submitted by Catledge should be dismissed and a 25% reduction in the fee claimed by the Pinkston attorneys is appropriate.  *See Roscoe*, 119 F.3d at 1233.  Following these deductions, the remaining possible fee award for Catledge is $23,105 and for the Pinkston attorneys is $21,562.50.

The fee applicant bears the burden of proving that the number of hours and the hourly rate for which compensation is requested is reasonable.  *Hensley,* 461 U.S. at 437; *Kellstrom,* 50 F.3d at 324; *Walker,* 99 F.3d at 770.  To determine the number of hours reasonably expended on a case, a fee applicant must show that billing judgment was exercised.  *Walker,* 99 F.3d at 769; *Hensley,* 461 U.S. at 437; *Saizan*, 448 F.3d at 800.  Billing judgment requires documentation of the hours charged and is usually shown by the attorney writing off unproductive, excessive, or redundant hours, and the remedy for failing to exercise billing judgment is to reduce the hours awarded by a percentage.  *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002); *Walker*, 99 F.3d at 770.  When there is no or scanty evidence of billing judgment, "the proper remedy . . . is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."  *Hopwood v. State of Texas*, 236 F.3d 256, 279 (5th Cir. 2000).

The Court finds the attorneys did not exercise billing judgment as evidenced by such charges as (1) legal research and long-distance calls; (2) efforts to reach opposing counsel, attempted phone calls or calls to confirm status of case or travel information; and (3) organizing materials.  *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 784 (1989).  The determination of whether the applicant's reported hours are repetitive and duplicative is a finding of fact by the district court.  *Cooper v. Pentecost,* 77 F.3d 829 (5th Cir. 1996).  In this case, there is no evidence that the attorneys utilized billing judgment, therefore,

the Court finds that the final award for each attorney should be reduced to eliminate excessive or duplicative hours. *Leroy v. City of Houston*, 831 F.2d 576, 585 n.15 (5th Cir. 1987).

This analysis must be carried further, because in addition to excessive and duplicative hours within a particular firm, the Court found duplicative hours claimed between the attorneys from different law firms. Numerous instances of duplication between the Freese and Goss law firm were found, including such items as entries such as "attention to letter dated 3/22/04 from Richard Freese to U.S. District Court Deputy regarding filing of Class Action and Summons" credited with 3 hours of work to Goss when an identical entry is found in Freese's fee submission listed with 4 hours credited to Freese. (Ct. R., Doc. 109, Exh. 2, p. 12; Ct. R., Doc. 110, Exh. 3, p. 7.) Other entries of a similar nature appear in Freese's time sheets such as review of letters from Goss to Julie Strickland and Jess Dickinson dated November 17, 2003, and December 2, 2003. (Ct. R., Doc. 110, Exh. 3, p. 2.) These examples are not the only instances of such duplication, as duplications also appear between the Keys and McCumber fee requests.

Accordingly, the Court finds that fees will not be allowed for excessive, redundant, insufficiently documented or unnecessary hours expended on developing this case. *Hensley*, 461 U.S. at 434; *Green*, 284 F.2d at 662. Excessive time spent preparing and reviewing briefs and letters sent by parties or the court, research time, and like items which are properly included as overhead in the attorney's hourly rates will also be eliminated. *See Cooper*, 77 F.3d at 832. In addition, fees requested for duplicated and repeated work and "intraoffice conferences" will not be awarded. *Riley*, 99 F.3d at 760. The claims also include requests for payment to multiple attorneys for the same tasks. Although some lawsuits need multiple lawyers, work on each aspect of the case by each attorney, and billing at maximum rates is unnecessary. *See i.e.*

*Rappaport v. State Farm Lloyds*, 275 F.3d 1079 (5th Cir. 2001).  In addition, the Court finds that Washington Mutual should not be required to pay for time spent on administrative matters, such as weekly meetings between attorneys in a firm.  *Barrilleaux v. Thayer Lodging Group, Inc.,* 1999 WL 397958, at *2 (E.D. La. 1999).

A number of hours were expended familiarizing the attorneys with the law, time spent consulting with individuals concerning cases in general, and time spent researching in the library. Quite simply, attorneys cannot charge Washington Mutual for staying current in class action law. *Alberti v. Klevenhagen,* 896 F.2d 927, 933-4 (5th Cir.), *vacated in part on other grounds,* 903 F.2d 352 (5th Cir. 1990); *Operation Push v. Mabus*, 788 F. Supp. 1406, 1420 (S.D. Miss. 1992); *Walker*, 99 F.3d at 769.  Those hours were deducted or greatly reduced from each of the fee applications.  This includes an additional 10% reduction of the fee requests submitted by the Pinkston attorneys.  (Ct. R., Doc. 70, p. 2.)

Based on these guidelines, the fee requests submitted by the attorneys were reduced by the Court to remove time spent in these activities from the fee applications.  The following reflects these deductions:

| | |
|---|---|
| Roman Schaul: | 1,540.00 hours |
| Suzanne Keys: | 34.00 hours |
| Isaac Byrd: | 7.50 hours |
| Precious Martin: | 13.00 hours |
| Robert Clark: | 66.00 hours |
| Harry McCumber: | 215.50 hours |
| R. Bradley Best: | 12.00 hours |

Richard Yoder, Jr.:                               23.00 hours

B. Humphreys McGee III:                      2.00 hours

Paralegal Identified as BMB:                 12.00 hours

Edward Blackmon:                             54.85 hours

Michael Hartung:                            570.70 hours

Richard Freese:                             249.35 hours

Regina L. Reese:                             14.80 hours

Glenda Frye:                                  1.50 hours

Phyliss Cole:                                  .50 hours

Tim Goss:                                   277.20 hours

Richard Capshaw:                            149.00 hours

Billy Ravkind:                               23.00 hours

Mikel Bowers:                               132.60 hours

Tamara Banno:                               140.50 hours

Sara Vedral:                                  9.75 hours

Iva York:                                    18.10 hours

William Catledge                             15.00 hours

Pinkston Attorneys                         $5,031.25

The Court will make further adjustments to the fee requests as follows.

B.      Travel Time

Courts typically compensate travel time at 50% of the attorney's rate in the absence of

documentation that any legal work was accomplished during travel time. *Watkins,* 7 F.3d at 459;

*Smith v. Walthall Co.,* 157 F.R.D. 388, 393 (S.D. Miss. 1994).  None of the attorneys  provided

this type of documentation.  As such, the Court finds that any award for time listed as travel to or

from a location on an attorney's fee reconciliation will be reduced by 50%.  This results in the

following deductions from the listed attorneys' cumulative hours:

| | |
|---|---|
| Richard Freese: | 29.00 hours |
| Harry McCumber: | 4.00 hours |
| Tim Goss: | 36.00 hours |
| Roman Schaul: | 8.00 hours |
| R. Bradley Best: | 3.00 hours |
| Michael Hartung: | 17.50 hours |
| William Catledge | 10.00 hours |

C.      Deductions Based on Type of Work Performed

An additional consideration for the Court in determining an appropriate award in this case

is the type of work reflected in the reconciliation.  It is appropriate to distinguish between legal

tasks that clearly require an attorney's skill, and other tasks such as investigation, clerical work,

compilation of facts and statistics; work which often can be accomplished by non-lawyers but

which a lawyer may do because he/she has no other help available, or simply because he/she

wishes to perform a specific task.  "[The] dollar value [of work performed] is not enhanced just

because a lawyer does it."  *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (quoting *Johnson,* 488

F.2d at 717); *Walker*, 99 F.3d at 771.

Clerical work which does not require the skill of an attorney, but which an attorney

nevertheless performs, may be compensated at a lesser rate than the attorney's customary hourly

rate.  *Cruz v. Hauck,* 762 F.2d 1230, 1235 (5th Cir. 1985).  It is also reasonable to assume that a more experienced attorney will take less time to accomplish a routine task than it would take a novice attorney, so a reduction in time may be appropriate depending on the attorney's experience.  *See Roscoe,* 119 F.3d at 1234.  The Court will analyze any reduction in the hours claimed for work performed prior to conducting the *Johnson* review of the claim for attorney's fees.

Time spent on such tasks as letters to accompany motions for filing, and review of lists should be compensated at the lesser rate as these are clerical duties that could have been handled by non-lawyers.  Work of this nature, if listed on attorney time[9], will be allowed at the paralegal billing rate.  The Pinkston attorneys outline that part of their time was spent arranging teleconferences, inspecting documents, and on "other matters" which the Court shall credit to the attorneys at the paralegal hourly rate.  (Ct. R., Doc. 70, p. 2.)  Catledge specifically listed 120 hours of paralegal work charged at the hourly rate of $75.  (Ct. R., Doc. 145, Exh. A, p. 4.)  The following reflects the number of hours from each attorney's fee request which the Court finds should be compensated at the paralegal hourly rate of $65:

| | |
|---|---|
| Roman Schaul: | 234.20 |
| Suzanne Keys: | 4.10 |
| Isaac Byrd: | 4.00 |
| Precious Martin: | .50 |
| Robert Clark: | No reduction |

---

[9]Certain firms did not specifically list work performed by each attorney or paralegal in the final totals.  The figures listed are the Court's best efforts to reconcile the information provided in these requests for each individual's work performed.

| | |
|---|---|
| Ramel Cotten: | No reduction |
| Harry McCumber: | 25.45 |
| R. Bradley Best: | 14.30 |
| Richard Yoder, Jr.: | 35.80 |
| B. Humphreys McGee III: | No reduction |
| Edward Blackmon: | No reduction |
| Michael Hartung: | 111.20 |
| Richard Freese: | 17.85 |
| Regina L. Reese: | 16.70 |
| Glenda Frye: | 24.00 |
| Tim Goss: | 16.20 |
| Richard Capshaw: | No reduction |
| Billy Ravkind: | No reduction |
| Mikel Bowers: | 20.00 |
| Tamara Banno: | 70.25 |
| Sara Vedral: | No reduction |
| Iva York: | 185.20 |
| William Catledge: | No further reduction |
| Pinkston Attorneys | 25.00 |

After making these reductions in hours, the Court will next consider the reasonable of the hourly rates billed by the attorneys.

D.  <u>Reasonableness of Hourly Rates Claimed</u>

Attorneys' fees are calculated at the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The Court's lodestar calculation takes into account the time and labor of the attorneys, as well as the requisite skill of the attorneys, and his/her experience, reputation, and ability.  The affidavits establish that the senior attorneys have considerable experience in complex legal matters.  (Ct. R., Docs. 105, 109-110.)  Goss contends that a multiplier is appropriate in this case, because the attorneys' experience in parallel litigation benefitted the class by eliminating the need for discovery and by providing an impetus to reach a settlement in this case.  (Ct. R., Doc. 109, p. 5.)  Hartung contends that the lodestar should be enhanced because the Defendants allegedly preyed on the Plaintiffs, who could not have advanced their claims or found competent legal counsel outside of the class.  (Ct. R., Doc. 105, p. 3.)

As previously explained, the attorneys each seek fees in differing amounts for their work; Hartung seeks payment at the rate of $225 per hour; Blackmon seeks an hourly rate of $350 per hour; Best seeks an hourly rate of $125 per hour; McCumber seeks an hourly rate of $175 per hour; Catledge and Shaul seek $100 per hour; Freese seeks a rate of $350 per hour for senior attorneys' work in his firm and $225 per hour for associates' work; Keys seeks an award of $250 per hour for senior attorney work and $125-170 per hour for associates' work; and Goss seeks a rate of $350 for senior attorney work in his firm, $300 per hour for associates work, and $250 per hour for junior associates work.  (Ct. R., Docs. 60, 61, 63, 89, 112, 115.)

In determining the appropriate figure for the attorney's fees for performing legal work, the Court considered the skill, experience and reputation of the attorney, the difficulty of the question

involved in this suit, and the prevailing rates for attorneys in the Southern District, and the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the hourly rate in the local legal community. *United States v. City of Jackson, Miss.*, 359 F.3d 727, 733 (5th Cir. 2004); *Blum*, 465 U.S. at 895-6. Based on the Court's knowledge of the fees in the area, the hourly rate of $225.00 per hour is found representative of the customary rates for senior attorneys such as Blackmon, Goss, Freese and the others who claimed rates in excess of this amount with similar expertise in this area, and this rate should be applied to any hours claimed by these individuals. Although no other proof beyond the aforementioned affidavit was presented to support these rates, the Court recognizes the quality of these individuals work and finds that the $225/hour rate is reasonable regardless of whether the work was performed outside of or in the courtroom. *See Freiler v. Tangipahoa Parish Bd. of Ed.*, 185 F.3d 337, 349 (5th Cir. 1999), *cert. denied* 530 U.S. 1251 (2000); *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 263 (5th Cir. 1999), *cert. denied* 531 U.S. 958 (2000); *Blum*, 465 U.S. at 895 n.11.

Best, Richard Yoder, Jr., and Humphreys McGee, III of the Holcomb, Dunbar law firm seek an award of $125.00 per hour which the Court finds reasonable. Other experienced attorneys such as Sara Vedral and Tamara Banno of Capshaw, Goss; and Precious Martin of Byrd, Martin and, who may not have primary responsibility for litigating, are entitled to compensation at a lower rate than the aforementioned attorneys. The court finds that $130 an hour is a reasonable rate for the hours approved, if any, for these attorneys. *See Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 261 F. Supp.2d 626, 634 (N.D. Miss. 2003); *Riley v. City of Jackson, Miss.*, 2 F. Supp.2d 864, 878 (S.D. Miss. 1997). The remaining attorneys requested a specific hourly amount for fees less than the aforementioned amounts, and these rates will be

used if any award is appropriate for that individual's work.  These attorneys and the rates

requested are as follows:

| | |
|---|---|
| Robert Clark: | $125.00 |
| Ramel Cotten: | $125.00 |
| Roman Schaul: | $100.00 |
| Brent Irby: | $125.00 |
| Charles McCallum: | $125.00 |
| Gerald Jacks: | $125.00 |
| William Catledge: | $100.00 |
| Harry McCumber: | $175.00 |

The firms also seek the rate of $75 per hour of paralegal time.  The Court, however, finds

that a rate of $65 per hour is reasonable for paralegal hours in this district.  *See ie. Roscoe,* 119

F.3d at 1235; *Lipscomb*, 261 F. Supp.2d at 633-4.

Several attorneys and paralegals listed in original fee requests had their time completely

eliminated when the Court removed hours claimed for work performed on the *Blackmon* case.  T.

Roe Frazier, JoAnne Allred, Leslie E. McFall, James S. Robinson, Susanne Hydrick and Patti

Burns were eliminated from Hartung's fee request.  (Ct. R., Doc. 110, Exh. 2.)  These individuals

will not receive an award in this case.

Therefore, calculation of the fee award, using the hourly rates as outlined above, and the

hours as reduced by the court, are as follows:

| | | |
|---|---|---|
| Roman Shaul: | Standard rate hours 115.5 x $100 | = $ 11,550.00 |
| | Paralegal rate hours 234.2 x $65 | = $ 15,223.00 |
| | Travel rate hours 16 x $50 | = $ 800.00 |
| | Fee Award | = $ 27,573.00 |

| | | | |
|---|---|---|---|
| Suzanne Keys: | Standard rate hours 106.50 x $225 | = | $ 23,962.50 |
| | Paralegal rate hours 4.10 x $65.00 | = | $     266.50 |
| | Fee Award | = | $ 24,229.00 |
| | | | |
| Isaac Byrd: | Paralegal rate hours 4 x $65 | = | $     260.00 |
| | Fee Award | = | $     260.00 |
| | | | |
| Precious Martin: | Standard rate hours 69 x $130 | = | $   8,970.00 |
| | Paralegal rate hours .50 x $65 | = | 32.50 |
| | Fee Award | = | $   9,002.50 |
| | | | |
| Robert Clark: | Standard rate hours 9.50 x $125 | = | $   1,187.50 |
| | Fee Award | = | $   1,187.50 |
| | | | |
| Ramel Cotten | Standard rate hours 8 x $125 | = | $   1,000.00 |
| | Fee Award | = | $   1,000.00 |
| | | | |
| Harry McCumber: | Standard rate hours 464.55 x $175 | = | $ 81,296.25 |
| | Paralegal rate hours 25.45 x $65 | = | $   1,654.25 |
| | Travel rate hours 4 x $87.50 | = | $     350.00 |
| | Fee Award | = | $ 83,300.50 |
| | | | |
| William Catledge: | Standard rate hours 26.20 x $100 | = | $   2,620.00 |
| | Travel rate hours 10 x $50 | = | $     500.00 |
| | Fee Award | = | $   3,120.00 |
| | | | |
| Anita Knowles | Paralegal hours 120 x $65 | = | $   7,800.00 |
| | Fee Award | = | $   7,800.00 |
| | | | |
| R. Brent Irby/ | Standard rate  $17,296.87 | = | $ 17,296.87 |
| Charles A. McCallum III[10] | Paralegal rate hours 25 x $65 | = | $   1,625.00 |
| | Fee Award | = | $ 18,921.87 |
| | | | |
| R. Bradley Best: | Standard rate hours 63.4 x $125 | = | $   7,925.00 |
| | Paralegal rate hours 14.30 x $65 | = | $     929.50 |
| | Fee Award | = | $   8,854.50 |
| | | | |
| Richard Yoder, Jr.: | Standard rate hours 32.20 x $125 | = | $   4,025.00 |
| | Paralegal rate hours 35.80 x $65 | = | $   2,327.00 |
| | Fee Award | = | $   6,352.00 |

---

[10]Number of hours were not used in this case because the hours were not outlined.

B. Humphreys McGee III:    Standard rate hours 7.85 x $125    = $     981.25
                           Fee Award                         = $     981.25

BMB[11]:                   Paralegal rate hours 58 x $65     = $   3,770.00
                           Fee Award                         = $   3,770.00

AM:                        Paralegal rate hours 5.80 x $65   = $     377.00
                           Fee Award                         = $     377.00

Edward Blackmon:           Standard rate hours 157.90 x $225 = $  35,527.50
                           Fee Award                         = $  35,527.50

Michael Hartung:           Standard rate hours 606 x $225    = $136,350.00
                           Paralegal rate hours 111.20 x $65 = $   7,228.00
                           Travel rate hours 17.50 x $112.50 = $   1,968.75
                           Fee Award                         = $145,546.75

Richard Freese:            Standard rate hours 293.15 x $225 = $  65,958.75
                           Travel rate hours 29 x $112.50    = $   3,262.50
                           Paralegal rate hours 17.85 x $65  = $   1,160.25
                           Fee Award                         = $  70,381.50

Regina L. Reese:           Paralegal rate hours 8.75x $65    = $     568.75
                           Fee Award                         = $     568.75

Glenda K. Frye:            Paralegal rate hours 3.25 x $65   = $     211.25
                           Fee Award                         = $     211.25

Phyllis Cole:              Paralegal rate hours .50 x $65    = $      32.50
                           Fee Award                         = $      32.50

Tim Goss:                  Standard rate hours 414.85 x $225 = $  98,341.25
                           Paralegal rate hours 16.20 x $65  = $   1,053.00
                           Travel rate hours 36 x $112.50    = $   4,050.00
                           Fee Award                         = $103,444.25

Richard Capshaw:           Standard rate hours 5 x $225      = $   1,125.00
                           Fee Award                         = $   1,125.00

Billy Ravkind:             Standard rate hours 4 x $225      = $     900.00
                           Fee Award                         = $     900.00

---

[11]These individuals were not identified by name but appeared in Best's time reconciliation.

| Mikel Bowers: | Standard rate hours 30.5 x $225 | = $ 6,862.50 |
| | Paralegal rate hours 20 x $65 | = $ 1,300.00 |
| | Fee Award | = $ 8,162.50 |
| | | |
| Tamara Banno: | Standard rate hours 53.1 x $130 | = $ 6,903.00 |
| | Paralegal rate hours 70.25 x $65 | = $ 4,566.25 |
| | Fee Award | = $ 11,469.25 |
| | | |
| Sara Vedral: | Standard rate hours 21.75 x $130 | = $ 2,827.50 |
| | Fee Award | = $ 2,827.50 |
| | | |
| Iva York: | Paralegal rate hours 185.2 x $65 | = $ 12,038.00 |
| | Fee Award | = $ 12,038.00 |

IV.   <u>Costs</u>

Certain properly itemized litigation expenses can be awarded to a prevailing party. FED. R. CIV. P. 54(d)(1). The taxable costs are listed in 28 U.S.C. § 1920, although a federal court may award litigation expenses beyond those listed in section 1920. See FED. R. CIV. P. 54(d)(2). "[W]hile an award of costs to a prevailing party is usual, the inclusion of various items within that award is within the discretion of the trial judge." *Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977). The Court has carefully reviewed the requested costs by each of the attorneys in this case, and has found various deficiencies in the fee requests.

The Court has thoroughly scrutinized the documentation supporting the outline of costs if provided by an attorney. Each request will be summarized as follows. Class counsel supplied no itemization of its costs, merely estimating an amount for costs and opining that "expending needless time to justify a . . . request" would be unnecessary. (Ct. R., Doc. 89, p. 19.) Best seeks a total of a total of $8,515.59 in expenses. (Ct. R., Doc. 116-3, p. 31.) This includes such items as charges for incoming and outgoing faxes; postage; filing fees; PACER research; fees paid to the court for copies; in-house photocopies charged at $.25 each; postage; Federal Express fees;

Westlaw computer research fees totaling $906.97; and $62.64 in long distance phone calls.  (*Id.*, pp. 20-31.)

Keys seeks a total of $15,135.40 in expenses for work performed in relation to this case. (Ct. R., Doc. 61, Exh. C.)  This request includes filing fees; deposition costs; copy costs; postage; shipping; fee for special temporary clerical help; and a mediation fee.  (*Id.*)

McCumber's expenses included such items as filing fees; fees to the Mississippi Insurance Department; printing; Federal Express fees; service of process fees; and lodging, travel and parking .  (Ct. R., Doc. 63, Exh. A.)  Both Keys and McCumber sought payment for the expert fees of Jackson Thornton and a mediation fee paid to the Dornan Law Office, PLLC.  (Ct. R., Docs. 61 and 63.)  These request will be eliminated from Keys' submission, which reduces her cost submission by $10,821.80.

Goss submitted an expense request totaling $69,128.88.  (Ct. R., Docs. 109, Exh. 4; and Doc. 135-7.)  Duplicate travel expenses for more than one attorney attending a conference amounting to $21,736.45 were deleted which left a remaining request for expenses of $47,392.43.  In addition, $5,271.56 in costs from the *Blackmon* litigation were deleted.  This leaves a possible total of $42,120.87 in costs for the Goss firm.  The remaining charges included such items as taxi fares; airline tickets; overnight shipping charges for documents sent to the court and attorneys in this case; and postage.  (Ct. R., Docs. 109, 135.)

Freese seeks expenses totaling $71,664.90.  (Ct. R., Docs. 110, Exh. 4 and 135-6.)  He enumerates categories of expenses to include a contract attorney fee; expert fees; airline and hotel expenses; and mail/Federal Express/copying costs, with no breakdown of when the costs were incurred.  (*Id.*)

Schaul seeks a total of $91,899.61 in expenses for such things as transportation; hotel; meals; filing fees; research; investigation; postage; copying; printing; phone calls; and transcripts on the original and amended fee requests.  (Ct. R., Docs. 62, 111, pp. 2-3.)  No breakdown of expenses was provided.  (*Id*.)

Catledge's amended request seeks an expense award of $3,865.00.  (Ct. R., Doc. 145, Exh. A, p. 4.)  This includes postage, food, long distance calls, mileage and hotel expenses.  (*Id*.)  No clients were associated with the expenses and no specific breakdown was provided for the postage and long distance costs.  (*Id*.)  The Pinkston attorney's expenses totaled $2,536.98 for filing fees, *pro hac vice* fees, postage; research expenses; travel; depositions; Federal Express and copying expenses.  (Ct. R., Doc. 70, Exh. B.)

Blackmon and Hartung submitted a joint request for expenses in the amount of $28,130.08, in which they list expenses such as fees paid to Trent Walker, Barbara Crawford, and Roy K. Smith, without identifying who these individuals are or what services were provided by these people; service of process fees; postage and photocopies fees, costs associated with long distance phone calls; and charges for a general research assistant.  (Ct. R., Doc. 60, Exh. B.)  The attorneys' expenses were reduced by the total expenses credited to the *Blackmon* case, or $16,035.47, as discussed earlier in this opinion.  This leaves $12,094.61 in possible expenses awarded at full value, despite the assertion that these attorneys seek a different amount to reflect one half of their expenses.  (Ct. R., Doc. 60, p. 4.)  The Court will further reduce these requests following the guidance discussed below.

A party may be awarded costs for exemplification and copies of papers necessary for use in the case.  28 U.S.C. § 1920(4).  Multiple costs of documents prepared for the convenience,

preparation, research, or records of counsel of the trial attorneys are not allowable.  *See Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991).  This would include charges for multiple copies of documents, attorney correspondence, and other such items.  *See Studiengesellschaft Kohle v. Eastman Kodak*, 713 F.2d 128, 133 (5th Cir. 1983).  A party seeking recovery of items of cost must show that photocopies were necessary and provided either to the court or the opposing party.  *Fogleman*, 920 F.2d at 286; *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999).  None of the attorneys provided substantiation for the photocopy charges listed as expenses in this case.  When substantiation was presented to support a request for costs, the itemization of copying costs does not identify the charges as necessary for use in the litigation.  *Holmes v. Cessna Aircraft Co*., 11 F.3d 63, 64 (5th Cir. 1994).

Accordingly, rather than require further substantiation for costs of photocopies listed in the reconciliation, the Court will tax one half the cost of photocopies and/or printing sought by each firm.  This reduction from the requested costs of copies from each firm results in the following:

| | | |
|---|---|---|
| Roman Schaul: | $ 23,778.83/2 = | $ 11,889.41 |
| Suzanne Keys: | $    750.00/2 = | $    375.00 |
| Harry McCumber: | $    427.83/2 = | $    213.92 |
| *Pinkston* attorneys: | $    450.00/2 = | $    225.25 |
| R. Bradley Best: | $ 1,807.50/2 = | $    903.75 |
| Edward Blackmon/Michael Hartung: | $ 3,881.84/2 = | $ 1,940.92 |
| Richard Freese: | $ 2,075.98/2 = | $ 1,037.99 |
| Tim Goss: | $ 4,877.08/2 = | $ 2,438.54 |

Deposition costs may be recovered if the deposition could reasonably be expected to be used for trial preparation at the time it was taken. *Fogleman*, 920 F.2d at 285. This is allowable even though the deposition is not actually used during the trial. *Soderstrum v. Town of Grand Isle*, 925 F.2d 135, 141 (5th Cir. 1991). In addition, the cost of serving subpoenas on witnesses is a recoverable cost. *Card v. State Farm Fire & Cas. Co.*, 126 F.R.D. 658, 662 (N.D. Miss. 1989), *aff'd* 902 F.2d 957 (5th Cir. 1990). Any amount claimed for these activities shall be allowed.

Expenses incurred in making investigations are not recoverable as costs. *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1170 (7th Cir. 1968), *cert. denied* 395 U.S. 908 (1969); 6 Moore, Fed. Prac., § 54.77(4) at 1725, and § 54.77(8) at 1751. This eliminates the $3,987.50 investigative charge contained in Shaul's fee request. (Ct. R., Doc. 62, p. 3.)

Three attorneys listed the cost of temporary help expenses as part of their costs. These fees are not properly recoverable as costs. *See Jenkins*, 491 U.S. at 285. A general temporary worker would be similar to a secretary "whose labor contributes to the work product for which an attorney bills the client" and is included as part of the attorney's fee request, which accounts not only for the work of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills the client; along with other expenses and profit. *See Chemical Mfrs. Ass'n v. U.S. EPA*, 885 F.2d 1276, 1281 (5th Cir. 1989). The Court finds that Keys' request for $648.00 for special temporary clerical help; Freese's request for $1,296.25 for a contract attorney, and Blackmon/Hartung's $468.00 request for a general research assistant are not properly recoverable and should be denied.

An attorney's reasonable out-of-pocket expenses which are ordinarily charged to fee

paying clients may be recovered as expenses. *See Kirksey v. Danks,* 608 F. Supp. 1448, 1459-60 (S.D. Miss.1985). To assist the court, the prevailing party should provide some demonstration that the costs necessarily result from the litigation. *Fogleman,* 920 F.2d at 286. If a party does not set out costs with sufficient particularity, a court may disallow them. *See Davis v. Commercial Union Ins. Co.,* 892 F.2d 378, 385 (5th Cir. 1990); *see Brady v. Fort Bend County,* 145 F.3d 691, 716 (5th Cir. 1998).

In this case, several attorneys merely lumped costs into categories such as "research/records"; "hotel expenses"; "shipping"; "mail"; "copying" and "printing" and "telephone calls" without providing a breakdown of when the expense was incurred or which case the expense was connected to, because no dates were provided for the expense. (Ct. R., Docs. 62, 145, 111, 135.) The Court finds that vague summaries of expenses should not be reimbursed and concludes that any costs clearly not incurred in connection with this case should not be paid from the settlement of this case. In addition, the Court finds that totals of costs listed in a summary fashion by Catledge, Freese, Schaul and Best should be reduced by 50%.

Videographer fees are not recoverable as costs. *West v. Nabors Drilling USA, Inc*., 330 F.3d 379, 395-6 (5th Cir. 2003); *Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 891 (5th Cir. 1993), *cert. denied,* 510 U.S. 1195. Any charges for media services should be removed from the request for payment of costs. This finding eliminates the request for payment for Deville Camera for $42.69 from McCumber's request and for the Multi media charge in the amount of $1,730.92 from Goss' request.

Out-of-pocket travel expenses are recoverable as components of attorney's fee requests. *See, e.g., Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.,* 919 F.2d

374, 380 (5th Cir. 1990); *see Mota,* 261 F.3d at 529.  The Court, however, finds that excessive

costs for taxis and requests for mileage or parking reimbursements are part of general overhead

expenses and should not be compensated.  *See Coats,* 5 F.3d at 891; *see also Holmes,* 11 F.3d at

65; *Nissho-Iwai Co. v. Occidental Crude Sales,* 729 F.2d 1530, 1551-2 (5th Cir. 1984).  The

Court has also reduced exorbitant hotel and meal expenses.

The Court finds that the remaining expenses were reasonably and necessarily incurred in

prosecuting this action and achieving the proposed Settlement.  *Hopwood*, 236 F.3d at 277.  The

expenses should therefore be reimbursed as follows:

| | |
|---|---|
| Roman Shaul: | $ 10,207.35 |
| Suzanne Keys: | $  3,290.60 |
| Harry McCumber: | $ 17,004.01 |
| William Catledge: | $  2,045.00 |
| *Pinkston* attorneys: | $  2,311.73 |
| R. Bradley Best: | $  7,611.84 |
| Edward Blackmon/Michael Hartung: | $  9,685.69 |
| Richard Freese: | $ 34,536.20 |
| Tim Goss: | $ 30,951.41 |

V.      Enhancement of Loadstar for Class Counsel

The lodestar is presumed to reflect a reasonable attorneys' fee award, but the district court

may adjust it upward or downward in exceptional cases.  *City of Burlington v. Dague,* 505 U.S.

557, 562 (1992); *Walker,* 99 F.3d at 771-3.  "Enhancements based upon these factors are only

appropriate in rare cases supported by specific evidence in the record . . .."  *Walker,* 99 F.3d at

771-2 (quotation omitted).

In this case, the Court finds that Class Counsel should be compensated at an enhanced rate based on the factors outlined in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974); *United States Leather, Inc. v. H & W P'ship,* 60 F.3d 222, 229 (5th Cir. 1995); *Cobb v. Miller,* 818 F.2d 1227, 1232 (5th Cir. 1987).  Accordingly, the Court finds that the fees for Goss and Freese, and their associates should be increased by 25% to reflect the additional efforts expended by Class Counsel in resolving this case.  This finding does not apply to the cost awards for these firms, or any award to paralegals in these firms.  Freese was initially awarded $70,381.50; his lodestar enhanced award is $87,976.90.  Goss was initially awarded $103,444.25; his lodestar enhanced award is $129,305.25.  Ravkind was initially awarded $900.00; his lodestar enhanced award is $1,125.00.  Bowers was initially awarded $8,162.50; his lodestar enhanced award is $10,203.13.  Capshaw was initially awarded $1,125.00; his lodestar enhanced award is $1,406.25.  Banno's award was $11,469.25; the lodestar enhanced award is $14,336.57.  Vedral was awarded $2,827.50; her enhanced lodestar award is $3534.38.

The Court further finds that no further adjustment to the lodestar need be made to reflect this aspect, or the notion that any of these attorneys were precluded from working on other cases by the hours spent on this case.  *See Shipes v. Trinity Indus.,* 987 F.2d 311, 319 (5th Cir.), *cert. denied,* 510 U.S. 991 (1993); *Alberti v. Klevenhagen,* 896 F.2d 927, 930 (5th Cir.), *vacated in part,* 903 F.2d 352 (5th Cir. 1990); *Smith v. Tower Loan of Miss., Inc.* 216 F.R.D. 338, 368 -69 (S.D. Miss. 2003).

V.     Final Awards

The Court finds that the following awards, including fees and costs, should be made to

the following attorneys and/or law firms[12] submitting fee requests in this case:

| | |
|---|---|
| Roman Shaul: | $ 37,780.35 |
| Suzanne Keys: | $ 27,519.60 |
| Isaac Byrd: | $ 260.00 |
| Precious Martin: | $ 9,002.50 |
| Robert Clark: | $ 1,187.50 |
| Ramel Cotten: | $ 1,000.00 |
| Harry McCumber: | $ 100,304.51 |
| William Catledge[13]: | $ 12,965.00 |
| Pinkston attorneys: | $ 21,233.60 |
| R. Bradley Best[14]: | $ 20,613.34 |
| Richard Yoder, Jr.: | $ 6,352.00 |
| B. Humphreys McGee III: | $ 981.25 |
| Edward Blackmon: | $ 35,527.50 |
| Michael Hartung: | $ 155,232.44 |
| Richard Freese: | $ 122,513.10 |
| Regina L. Reese: | $ 568.75 |
| Glenda Frye: | $ 211.25 |

---

[12]The awards for costs were listed with the primary attorney in those firms seeking fees for more than one attorney.  Blackmon/Hartung costs were added to Hartung's award.

[13]This award includes payment for paralegal Anita Knowles and Catledge's expenses.

[14]Best's award includes payment for work performed by paralegals identified only as BMB and AM.  (See supra, page 29.)

Phyllis Cole:                           $          32.50

Tim Goss:                               $ 160,256.70

Richard Capshaw:                        $     1,406.25

Billy Ravkind:                          $     1,125.00

Mikel Bowers:                           $   10,203.13

Tamara Banno:                           $   14,336.57

Sara Vedral:                            $     3,534.38

Iva York:                               $   12,038.00

The Court finds that motion filed by Precious Martin on behalf of Cofer's fees and by Derek Hopson should be denied as moot.  No further awards or fee payments should be made in connection with these case to the attorneys.  Contingency fee agreements between attorneys and their clients are not completely beyond the reach of the courts.  *See, e.g., Hoffert v. Gen. Motors Corp.,* 656 F.2d 161, 165 (5th Cir. 1981).  When, as in this case, an attorney "invokes the court's equitable power to approve a settlement agreement to distribute the proceeds, the court must scrutinize the reasonableness of the contingent attorneys' fee contract which affects the net recovery to the plaintiff."  *Cappel v. Adams,* 434 F.2d 1278, 1280-1 (5th Cir. 1970).  There should be no attempt to collect further fees from the class members or clients connected with this case by the attorneys.  *Toon v. Wackenhut Corr. Corp.,* 250 F.3d 950, 954 (5th Cir. 2001).

<u>Conclusion</u>

For the reasons given above, the Court finds that the motions for attorney's fees and expenses submitted by Richard A. Freese and Tim K. Goss [89-1]; William Catledge [59-1], Michael Hartung and Edward Blackmon, Jr. [60-1, 112-1, 133-1, 136-1], Roman Shaul [62-1,

111-1, 139-1], Harry McCumber [63-1], Charles A. McCallum III and R. Brent Irby [70-1], R. Bradley Best [115-1, 116-1, 117-1, 138-1] and by Suzanne Keys [61-1, 140-1] should be granted as calculated above.  The motions filed by Hopson [118-1] and Martin [143-1] should be denied as moot.  A separate order in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date.

THIS the 20th day of February, 2007.


_____*Walter J. Gex III*_____
UNITED STATES SENIOR DISTRICT JUDGE